SAWYER & LABAR LLP
ADRIAN SAWYER, State Bar No. 203712
*sawyer@sawyerlabar.com*
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820

CAHILL GORDON & REINDEL LLP
JOEL KURTZBERG (admitted *pro hac vice*)
*jkurtzberg@cahill.com*
JOHN MACGREGOR, State Bar No. 304330
*jmacgregor@cahill.com*
Ivan Torres (admitted *pro hac vice*)
*itorres@cahill.com*
32 Old Slip
New York, NY 10005
Telephone: 212.701.3445

***Counsel for Defendants X Corp., X.AI Corp., and X.AI LLC***

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELIZA LABS, INC., a corporation, and SHAW WALTERS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP. (fka Twitter), a corporation, X.AI CORP., a Nevada corporation, and X.AI LLC, a Nevada limited liability company,<br><br>Defendants. | Case No. 3:25-cv-07243-AMO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date: November 5, 2025<br>Time: 2:00 p.m.<br><br>**Judge:** Hon. Araceli Martínez-Olguín |

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 2:00 p.m. on November 5, 2025 or as soon thereafter as counsel may be heard, before the Honorable Araceli Martínez-Olguín, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendants X Corp., X.AI Corp., and X.AI LLC will, and hereby do, move this Court for an order granting their Motion To Transfer This Action to the United States District Court for the Northern District of Texas Pursuant to 28 U.S.C. § 1404(a), in its entirety, and transferring this action to the Northern District of Texas. The motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Joel Kurtzberg, the Declaration of Megan Scolari, arguments of counsel, and any other matters properly before the Court.

## RELIEF REQUESTED

Defendants request that the Court transfer this action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), on the grounds that the agreements between plaintiffs and defendants, which include the X User Terms of Service and the Developer Agreement, each include mandatory forum selection clauses requiring disputes such as this one to be litigated exclusively in the U.S. District Court for the Northern District of Texas or the state courts in Tarrant County, Texas.

## STATEMENT OF THE ISSUE TO BE DECIDED

1. Should this action be transferred to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a) on the grounds that the mandatory forum selection clauses in the relevant agreements require this dispute to be litigated exclusively in the Northern District of Texas or the state courts in Tarrant County, Texas?

# TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION ........ ii
RELIEF REQUESTED ........ ii
STATEMENT OF THE ISSUE TO BE DECIDED ........ ii
TABLE OF AUTHORITIES ........ iv
MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 1
A. Plaintiffs' Allegations ........ 1
B. The Terms ........ 3
C. Plaintiffs' Accounts ........ 9
III. LEGAL STANDARD ........ 10
IV. ARGUMENT ........ 11
A. Plaintiffs Were Aware of and Agreed to the Forum Selection Clauses in the Relevant Agreements ........ 11
B. The Mandatory Forum Selection Clauses in the Relevant Agreements Apply to Plaintiffs' Claims ........ 13
C. The X User Terms Also Apply to Plaintiffs' Claims Against the X.AI Defendants ........ 15
D. The Forum Selection Clauses in the Relevant Agreements Are Valid and Enforceable 17
CONCLUSION ........ 19


SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adibzadeh* v. *Best Buy, Co. Inc.*,
2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) ....... 12

*Barnert* v. *HP, Inc.*,
2021 WL 8895260 (N.D. Cal. Dec. 17, 2021) ....... 4n

*Brown* v. *Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....... 4n

*Build Group, Inc.* v. *N.R. Windows, Inc.*,
2022 WL 3697355 (C.D. Cal. Feb. 17, 2022) ....... 16

*Cascade Settlement Services LLC* v. *ADT LLC*,
2025 WL 2173959 (N.D. Cal. July 31, 2025) ....... 14

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....... 4n

*Joseph* v. *Amazon.Com, Inc.*,
2013 WL 4806462 (N.D. Cal. Sept. 9, 2013) ....... 13

*LaCross* v. *Knight Transport, Inc.*,
95 F. Supp. 3d 1199 (C.D. Cal. 2015) ....... 18

*Lawson* v. *DoorDash, Inc.*,
2023 WL 2782314 (N.D. Cal. Jan. 31, 2023) ....... 10

*Lentini* v. *Kelly Services, Inc.*,
2017 WL 4354910 (N.D. Cal. Oct. 2, 2017) ....... 16

*Li* v. *Amazon.com Services LLC*,
2023 WL 8720669 (N.D. Cal. Dec. 18, 2023) (Martínez-Olguín, J.) ....... 10, 12, 14, 17, 18

*Moretti* v. *Hertz Corp.*,
2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ....... 17

*Opperman* v. *Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ....... 4n

*Sun* v. *Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) ....... 13, 17, 18

*Swartz* v. *KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 4n

*Thermolife International, LLC* v. *Vital Pharmaceuticals, Inc.*,
2014 WL 12235190 (C.D. Cal. Aug. 15, 2014) .......... 4n

*Yiren Huang* v. *FutureWei Technologies, Inc.*,
2018 WL 10593813 (N.D. Cal. Sept. 24, 2018) .......... 16

**Statutes**

28 U.S.C. § 1404 .......... *passim*

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs filed the operative Complaint[1] against defendants in the wrong forum. This Court should transfer this action to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a), because plaintiffs agreed to mandatory forum selection clauses in multiple contracts that provide for any disputes to be litigated in that forum or in state court in Tarrant County, Texas.

Specifically, by using the X platform and by paying to maintain developer accounts for the X platform (Compl. ¶ 8), plaintiffs agreed to be bound by both X's User Terms of Service (the "X User Terms") and X's Developer Agreement (together with the X User Terms, the "Relevant Agreements"). Each of the Relevant Agreements includes a forum selection clause requiring plaintiffs to bring any claims relating to X's platform or the Relevant Agreements exclusively in federal court in the Northern District of Texas or state court in Tarrant County, Texas.

Plaintiffs' claims here are all covered by the Relevant Agreements' forum selection clauses: the claims are all based on X Corp.'s decision to suspend plaintiffs' use of X's platform for alleged violations of the X User Terms and on plaintiffs' communications with X related to that suspension. This action should therefore be transferred to its proper venue: the United States District Court for the Northern District of Texas.

## II. FACTUAL BACKGROUND

### A. Plaintiffs' Allegations

Plaintiff Eliza Labs, Inc. ("Eliza Labs") alleges it is a software developer, founded by

[1] In this Memorandum, the terms "Complaint" and "Compl." refer to plaintiffs Eliza Labs, Inc. and Shaw Walters's Amended Complaint, filed in this Court on September 23, 2025 (ECF No. 21).

plaintiff Shaw Walters in 2024, that designed open source software for operating autonomous agent systems ("AI Agents" or "Generative AI Chatbots") on social media platforms. *See* Compl. ¶¶ 4, 18, 34-35. Plaintiffs allege that their software enables individuals to create AI Agents that can operate on the X platform, operated by X Corp. *See id.* ¶ 4. Plaintiffs also allege that they each maintained developer accounts on the X platform, with plaintiff Eliza Labs alleging it maintained an account with the handle "@ElizaOS," and plaintiff Walters alleging he maintained an account with the handle "@shawmakesmagic." *See id.* ¶¶ 8, 53.

Plaintiffs allege defendant X Corp. is a "Nevada Corporation with a principal place of business" in "Bastrop, [Texas]," that defendant X.AI LLC is a "Nevada limited liability company . . . with a place of business" in "Palo Alto, [California]," and that both X Corp. and X.AI LLC are subsidiaries of defendant X.AI Corp, a "Nevada corporation with its principal place of business located in Palo Alto, California." *See id.* ¶¶ 20-22.

Plaintiffs further allege that defendant X Corp. suspended or "deplatformed" their associated X accounts under "false pretenses" to "extract know-how, eliminate a competitor, and clear the field" for the launch of AI Agents software allegedly developed and produced by X.AI. *Id.* ¶¶ 14, 67, 71-74, 149. From early 2025 through August 2025, X allegedly alerted plaintiffs that their accounts violated X's terms and conditions, including the X User Terms, through several communications, including a cease and desist letter. *See id.* ¶¶ 36-40, 57-61. As part of these communications, X allegedly sought information regarding Eliza Labs' software integration with X's platform and its compliance with the X User Terms. *See id.* In response, plaintiffs allegedly provided X with information about its open source software, including on "creating, developing, building, and deploying AI Agents" and "[Eliza Labs'] operations on X." *Id.* ¶ 57. Plaintiffs allege X Corp. used this information to optimize X.AI's AI Agents operations on X. *See id.* ¶¶ 57, 77.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

Plaintiffs allege X then suspended their accounts on or around June 10, 2025, for violations of X's terms and conditions, and allegedly blocked links to Eliza Labs' website and Github from being published on X. *See id.* ¶¶ 11, 53, 55. Finally, plaintiffs allege that "[a]t all times since their suspension, both accounts complied fully with X's terms and conditions," and that plaintiffs repeatedly "demonstrated [their] full compliance with X's terms and conditions" when responding to X's requests for more information. *Id.* ¶ 56.

Based on these allegations, plaintiffs assert thirteen claims. First, plaintiffs assert seven claims against all defendants: (1) tying in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, (2) unreasonable restraints of trade in violation of Section 1 of the Sherman Act, (3) monopolization and monopoly maintenance in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, (4) attempted monopolization in violation of Section 2 of the Sherman Act, (5) vertical restraints of trade and tying in violation of California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, 16726, (6) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and (7) unjust enrichment. *Id.* ¶¶ 175-205, 224-247, 271-288. Additionally, plaintiffs assert claims of unlawful agreement in violation of Section 1 of the Sherman Act, against defendants X Corp. and X.AI, unlawful monopolization and monopoly maintenance in violation of Section 2 of the Sherman Act, against defendants X.AI LLC and X.AI Corp. and separately against defendant X, and intentional misrepresentation, concealment, and false promise against defendant X. *Id.* ¶¶ 168-174, 206-223, 248-270.

**B. The Terms**

In creating, accessing, and using their user accounts, plaintiffs affirmatively agreed to the X

User Terms.[2] At all relevant times, the X User Terms have been prominently linked via blue hyperlinks on X's home page, between the links that allow users to sign up for the X platform, and the link that allows current users to log in to their accounts, as reflected in the below screenshot:

[2] X Corp.'s current X User Terms are available at https://x.com/en/tos, and all prior versions are available at https://x.com/en/tos/previous. In support of this Motion, defendants also submit, as an exhibit to the Megan Scolari Declaration, a copy of the archived version of this agreement, as it was available on August 26, 2025, reflecting its status on August 27, 2025—i.e., the date on which plaintiffs filed their original complaint. *See* Scolari Decl., Ex. 2. "As evidence may be considered by a court in ruling on a motion to transfer under 28 U.S.C. § 1404, th[e] Court need not take judicial notice of admissible evidence presented via . . . declaration." *Thermolife International, LLC* v. *Vital Pharmaceuticals, Inc.*, 2014 WL 12235190, at *2 (C.D. Cal. Aug. 15, 2014) (collecting cases). In any event, the relevant X User Terms have been incorporated by reference into the Complaint, as plaintiffs allege that they "complied fully with X's terms and conditions" and the terms and conditions are a central part of plaintiffs' allegations. *See* Comp. ¶ 56; *Swartz* v. *KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (affirming that "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned"). The Court thus need not take judicial notice of these documents to consider them, but they are the type of documents that are subject to judicial notice. *See, e.g.*, *Brown* v. *Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of Google's Terms of Service); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 813-14 (N.D. Cal. 2020) (same); *Barnert* v. *HP, Inc.*, 2021 WL 8895260, at *3 (N.D. Cal. Dec. 17, 2021) (taking judicial notice of HP's Terms of Service); *Opperman* v. *Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (collecting cases in which courts have taken judicial notice of publicly available policies). To the extent the Court concludes that it is required to take judicial notice of the agreements referenced in this Motion to consider them in ruling on this Motion, X Corp. is willing to file a separate Request for Judicial Notice if directed to do so by the Court.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com




Declaration of Megan Scolari, dated October 1, 2025 ("Scolari Declaration"), ¶ 7.

The current X User Terms and all relevant prior versions provide that X may revise the X User Terms and state that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." *See* Scolari Decl., Ex. 1 (Current X User Terms, effective November 15, 2025) at 9.

Since November 15, 2024,[3] the X User Terms contained the following mandatory forum selection clause, requiring all disputes to be brought exclusively in federal or state courts in Texas:

> All disputes related to these Terms or the Services,[4] including without limitation

---

[3] At all relevant times, the X User Terms provided that X Corp. may change the agreement's terms and conditions, and that continued access or use of the X platform constitutes acceptance of any changes. *See* Scolari Decl., Ex.1 (Current X User Terms, effective November 15, 2024) at 9, Ex. 2 (X User Terms, as web-archived on August 26, 2025) at 4, Ex. 3 (Prior X User Terms, effective September 29, 2023 to November 14, 2024) at 10.

[4] The "Services" are defined broadly as: "use of [X's] services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the 'Services'), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded,

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

> disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and [users] consent to personal jurisdiction in those forums and waive any objection to inconvenient forum.

Scolari Decl., Ex. 1 at 9.

The X User Terms also include a choice of law provision providing that "[t]he laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary." *Id.*

In connection with implementing the current X User Terms, X first gave notice to users of the updated Terms starting in mid-October 2024. Among other things, X served a prompt to X users that logged in to their X accounts between October 16, 2024, and April 14, 2025. The prompt served to X account holders provided:

> **Updates to our Terms of Service and Privacy Policy**
>
> We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them. If you want to learn more about these changes, head to the X Privacy Center.

Scolari Decl. ¶ 16. The prompt also included a link to the updated X User Terms. Scolari Decl., Ex. 4.

At the bottom of this prompt, users were asked to click a button labeled "Got it." The prompt was served for 180 days or until the user clicked the prompt. Scolari Decl. ¶ 18. According to X's records, plaintiff Eliza Labs clicked on the "Got it" button on October 30, 2024, and plaintiff Shaw Walters clicked on the "Got it" button on October 16, 2024. *Id.* ¶¶ 23-24. Both thus affirmatively

---

downloaded or appearing on the Services (collectively referred to as 'Content')." Scolari Decl., Ex. 1, at 2.

acknowledged and agreed to the revised terms.

Additionally, plaintiffs allege that they paid for developer accounts. *See* Compl. ¶¶ 8, 53. Setting up paid accounts requires users to affirmatively agree to the Developer Agreement, which governs a user's access to and use of licensed X Application Programming Interfaces (API), X content such as user profile information ("Licensed Material") and related paid services, by clicking "Accept & Subscribe." *See* Scolari Decl. ¶¶ 25-27, Ex. 5 (Developer Agreement).[5] The following screenshot reflects the prompt that prospective users receive in connection with signing up for developer accounts:

[5] X Corp's current Developer Agreement, which is part of X's Developer Terms, is available at https://developer.x.com/en/developer-terms/agreement-and-policy. In support of this Motion, defendants also submit, as an exhibit to the Scolari Declaration, a copy of the archived version of this agreement, as it was available on August 4, 2025, reflecting its status on August 27, 2025, i.e., the date on which plaintiffs filed their first complaint. *See* Scolari Decl., Ex. 6.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com




According to X's records, plaintiff Eliza Labs clicked the "You accept the Terms & Conditions" button on December 10, 2024, and plaintiff Shaw Walters clicked on it on October 11, 2024. Scolari Decl. ¶ 29.

Since October 11, 2024,[6] X's Developer Agreement contained the following mandatory forum selection clause, requiring all disputes to be brought exclusively in federal or state courts in Texas:

All disputes related to this Agreement, including any disputes, claims, or

[6] At all relevant times, X's Developer Agreement has also provided that X Corp. may change the agreement's terms and conditions, and that continued access or use of the Licensed Material, including by making recurring subscription payments, constitutes acceptance of any changes. *See* Scolari Decl., Ex. 7 (Developer Agreement, last updated Oct. 11, 2024) at 9.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

> controversies arising out of or relating to this Agreement, the marketing of Licensed Material, and/or [the user's] participation in the Licensed Material, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

*Id.* ¶ 31.

Like the X User Terms, the relevant Developer Agreement also includes a choice of law provision providing that, "[t]he laws of the State of Texas, excluding its choice of law provisions, will govern this Agreement and any dispute that arises between you and X, notwithstanding any other agreement between the parties to the contrary." *Id.* Both the forum selection clause and choice of law provisions survived the most recent updates to the Developer Agreement on June 5, 2025. *See* Scolari Decl., Ex. 5 at 17-18.

The forum selection clauses and the choice of law provisions in the Relevant Agreements were in effect throughout the time of the alleged wrongdoing in the Complaint (which allegedly occurred between early 2025 and August 2025), at the time when plaintiffs brought this lawsuit, and remain in effect to this day.

### C. Plaintiffs' Accounts

Walters created his X account associated with the handle "@shawmakesmagic" on September 1, 2024. Scolari Decl. ¶ 24. This account acknowledged receiving a notice regarding the current X User Terms on October 16, 2024, by clicking the prompt presented by X. *Id.* Plaintiff Walters then also created a free developer account on October 11, 2024, and later upgraded to a paid developer account for the period of January 12, 2025 through April 10, 2025. *Id.* ¶ 32. When Walters upgraded his developer account, the current forum selection clause and choice of law provisions were included in the Developer Agreements that Walters acknowledged during the developer sign-up process. *Id.*

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

Eliza Labs created its account associated with the handle "@ElizaOS" on October 31, 2024. Scolari Decl. ¶ 21. This account acknowledged receiving a notice regarding the current X User Terms on October 30, 2024, by clicking the prompt presented by X. *Id.* ¶ 23. Eliza Labs then also created a free developer account on December 10, 2024, and later upgraded to a paid developer account for the period of January 12, 2025 through April 10, 2025. *Id.* ¶ 34. When Eliza Labs created, and subsequently upgraded its developer account, the current forum selection clause and choice of law provisions were included in the Developer Agreements that Walters acknowledged during the developer sign-up process. *Id.*

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "When a case concerns an enforcement of a forum selection clause, Section 1404(a) provides a mechanism for its enforcement and 'a proper application of [the statute] requires that a forum-selection clause be given controlling weight in all but the most exceptional cases.'" *Li* v. *Amazon.com Services LLC*, 2023 WL 8720669, at *2 (N.D. Cal. Dec. 18, 2023) (Martínez-Olguín, J.) (quoting *Atlantic Marine Construction Co., Inc.* v. *U.S. District Court for the Western District of Texas*, 571 U.S. 49, 60 (2013)). While courts often look to a mix of factors regarding both private- and public-interests, in resolving motions to transfer under Section 1404(a), "[w]hen there is a valid forum-selection clause, the court 'should not consider arguments about the parties' private interests . . .' and, the 'court [ ] must deem the private-interest factors to weigh entirely in favor of the preselected forum.'" *Lawson* v. *DoorDash, Inc.*, 2023 WL 2782314, at *2 (N.D. Cal. Jan. 31, 2023) (quoting *Atlantic Marine Construction*, 571 U.S. at 64).

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

## IV. ARGUMENT

This Court should transfer this action to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a) because (i) plaintiffs were aware of and repeatedly agreed to be bound by the X User Terms and X's Developer Agreement, as confirmed by plaintiffs' own allegations of their "full compliance" with these Terms (Compl. ¶ 56); (ii) the mandatory forum selection clauses in those agreements apply to this dispute; and (iii) the mandatory forum selection clauses are valid and enforceable.

### A. Plaintiffs Were Aware of and Agreed to the Forum Selection Clauses in the Relevant Agreements

Plaintiffs' own allegations leave no doubt as to whether plaintiffs had actual notice of the Relevant Agreements. Indeed, plaintiffs themselves allege that Eliza Labs "demonstrated its full compliance with X's terms and conditions," in response to inquiries from X. Additionally, as both plaintiffs opened and maintained developer accounts on X before their suspension, each necessarily received notice of the X User Terms and Developer Agreement on numerous occasions, including when plaintiffs (i) signed up as X users, (ii) affirmatively agreed to the X Developer Terms, including the Developer Agreement, in connection with clicking "Accept & Subscribe" when each plaintiff upgraded their account to a paid developer account, (iii) signed in to the X platform, and (iv) when plaintiffs engaged in direct correspondence with X personnel that invoked the X User Terms. As reflected by plaintiff Walters' own correspondence to X, not only were plaintiffs generally aware of X's various terms and conditions, but they claimed to "take X's Terms of Service seriously." Declaration of Joel Kurtzberg, dated October 1, 2025 ("Kurtzberg Decl."), Ex. 1 (June 12, 2025 email from shaw@elizalabs.ai to litigation@twitter.com) at 1. Plaintiffs even directly acknowledged in that same correspondence paying for an "X developer account," claiming further to "comply with the terms and conditions governing those accounts." *Id.* at 1-2.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

Even setting aside plaintiffs' own direct acknowledgment of awareness of these Terms, courts within this Circuit routinely hold that plaintiffs have received adequate constructive notice of terms and conditions containing forum selection clauses, where those agreements "appear in blue, hyperlinked text," as is true here:




Scolari Decl. ¶ 7 (X's sign-in page from August 27, 2025, as archived by the Internet Archive's Wayback Machine); *Li*, 2023 WL 8720669, at *6 (finding adequate notice of forum selection clause where Amazon's website included text stating "[b]y placing your order, you agree to Amazon's privacy notice and conditions of use" and where "the '[p]rivacy notice' and 'conditions of use' then appear in blue, hyperlinked text"); *Adibzadeh* v. *Best Buy, Co. Inc.*, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) (finding consent to Best Buy's website's terms where "Sign In" button was followed by: "By continuing you agree to our Terms and Conditions"). Regardless, as plaintiffs here have themselves acknowledged having notice of the Relevant Agreements, there can be no

serious question as to whether plaintiffs were on notice of those Terms, voluntarily assented to them, and should be bound by the Terms they agreed to.

Finally, counsel for X Corp. expressly flagged the choice of forum clauses in the Relevant Agreements for plaintiffs' counsel on September 9, 2025, a full two weeks before plaintiffs filed their Amended Complaint on September 23. Kurtzberg Decl., Ex. 2 (Sept. 9, 2025 email from Joel Kurtzberg to plaintiffs' counsel). There can thus be no doubt that plaintiffs were on actual notice before filing the Amended Complaint, not only of the X User Terms and Developer Terms of Service generally, but of the specific, mandatory choice of forum clauses at issue here.

**B. The Mandatory Forum Selection Clauses in the Relevant Agreements Apply to Plaintiffs' Claims**

Plaintiffs' allegations and claims relate directly to plaintiffs' use of, and suspension from, the X platform, and therefore fall squarely within the broad scope of the exclusive forum selection clauses in the Relevant Agreements, which require "all disputes" related to either X's Services, the X User Terms, or X's Developer Agreement to be brought exclusively in Texas courts.

Under Ninth Circuit law, clauses containing this type of "related to" language are read very broadly. As the Ninth Circuit has held, "forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Sun* v. *Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). Thus, a "dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Id.* Courts also have held that broad venue clauses cover noncontractual claims that fall within the scope of the forum selection clause, including with respect to antitrust claims and claims brought under California Business and Professions Code § 17200. *See Joseph* v. *Amazon.Com, Inc.*, 2013 WL 4806462, at *4-5 (N.D. Cal. Sept. 9, 2013) (holding that the plaintiff's antitrust claims were covered by the forum selection clause where

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

plaintiffs alleged the defendant's member program required sellers to discount products in a way that minimized profit); *see generally Li*, 2023 WL 8720669, at *7 (enforcing forum selection clause where plaintiffs brought claims under California Business and Professions Code § 17200); *see also Cascade Settlement Services LLC* v. *ADT LLC*, 2025 WL 2173959, at *5 (N.D. Cal. July 31, 2025) (holding antitrust claims were covered by broadly worded jurisdictional retention provision).

Plaintiffs' claims here do not merely "relate to" X's Services and the Relevant Agreements. The Services and the agreements are central to their claims, *all* of which revolve around plaintiffs' allegations that X "deplatformed Eliza Labs and Mr. Walters because the accounts violated X's terms and conditions" and that "X then delayed, throttled, and impermissibly inspected its competitor Eliza's product under the false pretenses of evaluating plaintiffs for compliance purposes and false promises of reactivation." Compl. ¶¶ 14, 55. As to plaintiffs' claims for intentional misrepresentation, concealment, and false promise, each claim is based on plaintiffs' allegations that X made representations or concealed facts related to the basis for X's decision to suspend plaintiffs' accounts and thus terminate their access to the Services on X. *See id.* ¶¶ 249-50 ("X made knowingly false representations to Eliza Corp that it would reinstate and/or not deactivate plaintiffs' accounts . . . ."), ¶¶ 256-57 ("[X] intentionally failed to disclose that, no matter what plaintiffs did . . . [X] would be deplatforming and/or not reactivating plaintiffs' X accounts . . . ."), ¶¶ 263-64 ("X promised plaintiffs that if they demonstrated that they were in full compliance with X's terms and conditions . . . , X would reactivate plaintiffs' accounts."). Similarly, plaintiffs' claims under California Business and Professions Code § 17200, California's Cartwright Act, the common law of unjust enrichment, and the Sherman Act are also all based on plaintiffs' allegations that the decision to suspend plaintiffs' accounts and otherwise prevent users from posting links relating to Eliza Labs on X was unfair or anticompetitive, because it impeded plaintiffs' ability to operate its

AI Agents on X's platform and to participate in AI-related conversations on X while X.AI launched its own competitor product. Compl. ¶¶ 170-71, 179-81, 189-90, 199, 209-10, 219, 228, 238-42, 273, 275, 284. Plaintiffs' claims, which all concern X's decision to suspend plaintiffs' use of X's platform or its developer accounts due to allegedly "pretextual" violations of the X User Terms and Developer Agreement, and the parties' dealings related to that decision, are plainly encompassed within the broadly worded forum selection clauses in the Relevant Agreements.

### C. The X User Terms Also Apply to Plaintiffs' Claims Against the X.AI Defendants

Plaintiffs' claims against the X.AI defendants also fall within the scope of the X User Terms. As discussed in Section IV.B *supra*, the X User Terms' forum selection clause broadly covers all claims that "relate to" X's Terms or its Services. Further, plaintiffs allege that the X.AI defendants engaged in the same scheme as X—i.e., X and X.AI removed plaintiffs from X and pretextually accused them of violating X's terms and conditions for the purpose of reducing competition with X.AI's product, Grok. *See, e.g.*, Compl. ¶ 171 (Claim 1 Against X and X.AI) ("[X and X.AI's] agreement forecloses X.AI's rivals from a substantial share of the relevant generative AI chatbot market and the scale necessary to compete while artificially advantaging Grok, the dominant and only generative AI chatbot integrated into X's API and platform."); ¶ 219 (Claim 6 Against X.AI LLC and X.AI Corp.) ("X.AI LLC and X.AI Corp. have has [*sic*] unlawfully acquired monopoly power in these Markets, including through the anti-competitive acts described herein. And however X.AI LLC and X.AI Corp. initially acquired their monopoly, they have unlawfully maintained their monopoly, including through the anti-competitive acts described herein.").[7] Thus, the X User Terms

---

[7] *See also, e.g.*, Compl. ¶ 179 (Claim 2 Against All Defendants) ("X uses its monopoly control over the social media platform to moderate content that can be perceived as competing with X.AI's product Grok. X does this by, for example, blocking Eliza's website, blocking Eliza's Github, and deplatforming Eliza and its founder Shaw Walters so they are unable to participate in the largest

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

and the defined Services are central to plaintiffs' claims against the X.AI defendants, just as they are central to plaintiffs' claims against X. *See* Section IV.B *supra*.

Importantly, the mere fact that plaintiffs brought these claims against non-signatories to the agreement (the X.AI defendants) does not mean that the X User Terms do not govern. Rather, "non-parties to an agreement containing a forum-selection clause," like the X.AI defendants vis-à-vis the X User Terms, "can benefit from such a clause" where, as here, the "litigation concern[s] conduct related to the agreement." *Lentini* v. *Kelly Services, Inc.*, 2017 WL 4354910, at *5 (N.D. Cal. Oct. 2, 2017) (forum selection clause was enforceable as to non-signatory defendant because the interactions between plaintiff and the non-signatory defendant "took place as part of the larger contractual relationship" subject to the clause and the defendant was "willing to submit[8] to the forum-selection clause"); *see also Build Group, Inc.* v. *N.R. Windows, Inc.*, 2022 WL 3697355, at *4-5 (C.D. Cal. Feb. 17, 2022) (non-signatory plaintiffs were subject to forum selection clause because the clause covered "any litigation or special proceeding to resolve any dispute or claim arising from, related to, or connected with this Agreement" and "[p]laintiffs' claims relate[d] to the interpretation and performance of the [agreement] itself"); *Yiren Huang* v. *FutureWei Technologies, Inc.*, 2018 WL 10593813 (N.D. Cal. Sept. 24, 2018) ("Under Ninth Circuit law, closely related parties may be bound by a forum selection clause even though they were not signatories to the contract containing the clause.").

global (or, alternatively, US-based) conversation regarding the product they make"); ¶ 240 (Claim 8 Against All Defendants) (similar).

[8] For the avoidance of doubt, the X.AI defendants are similarly willing to submit to the forum selection clause in the X User Terms.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

### D. The Forum Selection Clauses in the Relevant Agreements Are Valid and Enforceable

As this Court itself has recognized, "the party seeking to avoid a forum selection clause bears a heavy burden to establish a ground upon which the court will conclude the clause is unenforceable." *Li*, 2023 WL 8720669, at *2 (internal quotations omitted). To meet this burden, a plaintiff must make "a strong showing" that "(1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the plaintiff will for all practical purposes be deprived of his day in court." *Sun*, 901 F.3d at 1087-88 (internal quotation marks omitted). None of these factors is present here.

***First***, while plaintiffs' Complaint includes claims alleging intentional misrepresentation, concealment, and false promises, none of the claims calls into question whether the forum selection clauses were the product of fraud or overreaching. Having had multiple opportunities to review and reject these clauses, including before any of the alleged misconduct, plaintiffs' voluntary decision to repeatedly agree to the Relevant Agreements, and even to upgrade their accounts to paid developer accounts, undermine any potential arguments as to fraud or overreaching.

***Second***, enforcing the forum selection clause would not contravene a strong public policy of California. As plaintiffs plead, X Corp. is a "Nevada Corporation with a principal place of business" in "Bastrop, [Texas]" (Compl. ¶ 20), thus significantly limiting any local interest California may have in this controversy. To the extent California may have an interest in providing California residents a forum to redress, where "defendants are not California corporations, California has little interest in keeping the litigation in this state to deter future conduct." *Moretti* v. *Hertz Corp.*, 2014 WL 1410432, at *5 (N.D. Cal. Apr. 11, 2014) (quoting *Guimei* v. *General*

*Electric Co.*, 172 Cal. App. 4th 689, 703 (2009) (internal quotation marks omitted). Nor can plaintiffs carry their burden of establishing that the transfer of this action to the Northern District of Texas will result in any remedy being "altogether foreclosed and unavailable." *LaCross* v. *Knight Transport, Inc.*, 95 F. Supp. 3d 1199, 1206 (C.D. Cal. 2015); *see also Li*, 2023 WL 8720669, at *6 (plaintiffs had failed to meet their burden of establishing that the presence of a choice of law provision meant that the transferee court would not uphold plaintiffs' non-waiveable rights").

***Third***, plaintiffs do not and cannot plausibly claim that trial in the Northern District of Texas will be so gravely difficult and inconvenient that they will be deprived of their day in court. As the Ninth Circuit has recognized, Supreme Court jurisprudence suggests this factor "is difficult to satisfy" because "[w]here the parties have agreed to a forum-selection clause, they 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Sun*, 901 F.3d at 1091 (quoting *Atl. Marine Construction*, 571 U.S. at 64). Thus, this factor is inapplicable "even when the contractually selected forum may afford the plaintiff less effective remedies than they could receive in the forum where they filed suit." *Id.* at 1092. Here, as plaintiffs retain the ability to seek remedies under Texas law (as they bargained for by agreeing to the Relevant Agreements), they cannot meet the high burden required to establish that this factor applies.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

## CONCLUSION

X Corp. respectfully requests that the Court transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

Dated: October 1, 2025

*/s/* Joel Kurtzberg
Joel Kurtzberg (admitted *pro hac vice*)
John MacGregor, State Bar No. 304330
Ivan Torres (admitted *pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone: 212.701.3120
jkurtzberg@cahill.com
jmacgregor@cahill.com
itorres@cahill.com

Adrian Sawyer, State Bar No. 203712
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

***Attorneys for Defendants X Corp., X.AI Corp., and X.AI LLC***