SAWYER & LABAR LLP
ADRIAN SAWYER, State Bar No. 203712
*sawyer@sawyerlabar.com*
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820

CAHILL GORDON & REINDEL LLP
JOEL KURTZBERG (admitted *pro hac vice*)
*jkurtzberg@cahill.com*
JOHN MACGREGOR, State Bar No. 304330
*jmacgregor@cahill.com*
Ivan Torres (admitted *pro hac vice*)
*itorres@cahill.com*
32 Old Slip
New York, NY 10005
Telephone: 212.701.3445

***Counsel for Defendants X Corp., X.AI Corp., and X.AI LLC***

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELIZA LABS, INC., a corporation, and SHAW WALTERS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP. (fka Twitter), a corporation, X.AI CORP., a Nevada corporation, and X.AI LLC, a Nevada limited liability company,<br><br>Defendants. | Case No. 3:25-cv-07243-AMO<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date: November 5, 2025<br>Time: 2:00 p.m.<br><br>**Judge:** Hon. Araceli Martínez-Olguín |

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

ARGUMENT ..... 1

I. INTRODUCTION ..... 1

II. X PROVIDED SUFFICIENT NOTICE OF THE FORUM SELECTION CLAUSES ..... 2

III. THE FORUM SELECTION CLAUSES ARE VALID AND ENFORCEABLE ..... 6

IV. ALL OF THE CLAIMS ARE COVERED BY THE FORUM SELECTION CLAUSES ..... 12

V. TRANSFER OF THE ENTIRE ACTION ALSO SERVES JUDICIAL ECONOMY ..... 15

CONCLUSION ..... 15


SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angell* v. *Shell Oil Co.*,
2004 WL 7337807 (D.N.M. Aug. 20, 2004) .... 11

*Berman* v. *Freedom Financial Network, LLC*,
30 F. 4th 849 (9th Cir. 2022) .... 4, 9

*Besag* v. *Custom Decorators, Inc.*,
2009 WL 330934 (N.D. Cal. Feb. 10, 2009) .... 11

*Campbell* v. *Princess Cruise Lines Ltd.*,
2021 WL 75663 (N.D. Cal. Jan. 8, 2021) .... 7

*Carnival Cruise Lines* v. *Shute*,
499 U.S. 585 (1991) .... 6

*Doe* v. *Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .... 12

*East Bay Women's Health, Inc.* v. *GloStream, Inc.*,
2014 WL 1618382 (N.D. Cal. Apr. 21, 2014) .... 11

*Fred G.* v. *Anthem Blue Cross Life & Health Insurance Co.*,
2022 WL 3227127 (N.D. Cal. Aug. 10, 2022) .... 15

*Gonzales* v. *Charter Communications, LLC*,
2020 WL 5074024 (N.D. Cal. Aug. 24, 2020) .... 10

*Independent Financial Group, LLC* v. *Quest Trust Co.*,
2021 WL 2550397 (N.D. Cal. June 22, 2021) .... 15

*Kaplan* v. *Athletic Media Co.*,
705 F. Supp. 3d 992 (N.D. Cal. 2023) .... 4

*Manetti-Farrow Inc.* v. *Gucci America, Inc.*,
858 F.2d 509 (9th Cir. 1988) .... 14

*Madoff* v. *Bold Earth Teen Adventures*,
2013 WL 1337337 (D. Haw. Mar. 28, 2013) .... 10

*Oberstein* v. *Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023) .... 4, 9

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

*Pelleport Investors, Inc.* v. *Budco Quality Theatres, Inc.*, 741 F.2d 273 (9th Cir. 1984) ........ 10

*PennyMac Loan Services, LLC* v. *Black Knight, Inc.*, 2020 WL 5985492 (C.D. Cal. Feb. 13, 2020) ........ 9, 15

*Regents of the Univ. of California* v. *Howmedica, Inc.*, 23 Fed. R. Serv. 2d 260 (D. Md. 1976) ........ 12

*Relink US LLC* v. *Tesla Inc.*, 2025 WL 2104030 (N.D. Cal. July 28, 2025) ........ 13

*Royal Queentex Enterprises* v. *Sara Lee Corp.*, 2000 WL 246599 (N.D. Cal. Mar. 1, 2000) ........ 10

*Sawyer* v. *Bill Me Later, Inc.*, 2021 WL 7718723 (C.D. Cal. Oct. 21, 2021) ........ 12

*Testa* v. *Becker*, 2010 WL 1644883 (C.D. Cal. Apr. 22, 2010) ........ 6, 7

*Whalen* v. *Facebook, Inc.*, 2022 WL 19934419 (N.D. Cal. Apr. 11, 2022) ........ 5

*Whalen* v. *NBA Properties, Inc.*, 2025 WL 1948591 (N.D. Cal. July 16, 2025) ........ 5

*White Knight Yacht LLC* v. *Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931 (S.D. Cal. 2019) ........ 3

*World Wide Foods Inc.* v. *First-Citizens Bank & Trust Co.*, 2025 WL 2684294 (C.D. Cal. Aug. 20, 2025) ........ 4, 5

*Velaro, Inc.* v. *National Flood Services, LLC*, 2021 WL 8779924 (C.D. Cal. July 7, 2021) ........ 14

**Statutes**

28 U.S.C. § 1404(a) ........ 15

Cal. Civ. Code § 1698(a) ........ 9

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

## ARGUMENT

### I. INTRODUCTION

The crux of the allegations of the Amended Complaint—which Defendants deny—is that X Corp. ("X") conspired with its corporate affiliates, X.AI Corp. and X.AI LLC (collectively, the "X.AI Defendants") to deprive Plaintiffs from using X's "Services" (i.e., the X platform) by falsely accusing Plaintiffs of violating X's Terms of Service, all to remove a competitor in the market for AI Agents. Compl. ¶¶ 7, 14, 55-56. While Plaintiffs strain to argue that the antitrust claims against the X.AI Defendants here "have no relation whatsoever to X's Terms of Service," Opp. at 9, nothing could be further from the truth: the allegations against X.AI focus on a supposed intra-company conspiracy to deprive Plaintiffs from operating on X by invoking allegedly false violations of X's Terms of Service, all to benefit the X.AI Defendants by eliminating one of its competitors from the X platform. It is difficult to think of a claim ***more*** connected to both X's "Services" and X's Terms of Services—which are precisely the types of claims covered by X's current choice of forum clause, requiring suits about X's Services or Terms of Service to be brought exclusively in the Northern District of Texas. Scolari Decl., Ex. 1 at 9.

And it is hard to think of a claim better suited for application of the "closely related" doctrine, which applies X's Terms of Service to the X.AI Defendants, both of which are affiliates of X and are alleged to have conspired with X to kick Plaintiffs off the X platform by asserting violations of X's Terms of Service, all so the X.AI Defendants could eliminate a competitor on the X platform.

Plaintiffs further strain to argue that this is actually a case of first impression – the first case, they say, involving a clickwrap contract to amend a forum selection clause. Opp. at 12-13. Not so. The case law could not be clearer that adequate notice to amended Terms of Service is given when, as here, users are provided with a pop-up flagging that amendments have been made, a link to the amended terms, and a button to click on affirmatively acknowledging and agreeing to the amended terms. Whether Plaintiffs claim that they read the new terms or not, under clear, well-established case law, they were given ample notice of the amendments and agreed to them. Far from being

novel, this case is about as straightforward as they come, and nothing in Plaintiffs' opposition brief calls into question the basic facts that mandate transfer here under the relevant cases: namely, that both Plaintiffs were notified that X's Terms of Service were being amended, provided with a link to the new terms and a blog post about those new terms, and clicked on a button saying "Got it" that acknowledged and accepted the revised terms. That should be the end of the matter.

Plaintiffs' remaining arguments as to the potential unavailability of witnesses and the possibility that their California statutory claims might be dismissed post-transfer on the basis of the Texas forum choice of law provision also fall short of the heavy burden imposed on a party seeking to set aside a presumptively valid forum selection clause.

This case should be transferred to the Northern District of Texas.

## II. X PROVIDED SUFFICIENT NOTICE OF THE FORUM SELECTION CLAUSES

Plaintiffs' opposition does not dispute any of the facts central to the question of whether Plaintiffs had constructive notice of the mandatory Texas forum selection clauses relevant here.

*First*, as Defendants' motion explained, when each of the X accounts associated with the Plaintiffs was created, each Plaintiff voluntarily agreed to be bound by X's User Terms. *See* Br. at 9-10. Walters confirms this by specifically admitting: "When I first made my X account, I reviewed X's Terms of Service." Opp. at 5; Walters Decl. ¶ 17. Thus, it is undisputed that Plaintiffs had actual notice of the language in X's User Terms that states:

> **We may revise these Terms from time to time**. The changes will not be retroactive, and the most current version of the Terms, which will always be at x.com/tos, will govern our relationship with you. **We will try to notify you of material revisions, for example via a service notification** or an email to the email associated with your account. **By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms**.

Scolari Decl., Ex. 3 at 10 (emphasis added).

Plaintiffs also do not dispute that Eliza Labs created its "@elizaos" account on October 30, 2024. In so doing, Eliza Labs agreed to be bound by the language quoted above and was also put on constructive notice as to both the September 1, 2024 and November 15, 2024 User Terms,



SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

because the terms of service page available on the day Eliza Labs created its account prominently displayed ***both*** the soon-to-be effective Terms of Service with a Texas forum selection clause, and the soon-to-be outdated terms of service, with a ribbon prominently displayed at the top calling attention to the update and its effective date. *See* Supplemental Declaration of Megan Scolari ("Supp. Scolari Decl."), Ex. 9. Whether Eliza Labs actually read that banner or either version of the User Terms that followed it is irrelevant. *See* below at 3-6.

*Second*, while Plaintiffs claim to have never reviewed the Texas forum-selection clause contained in X's current User Terms, Opp. at 5, they do not dispute that they received an in-app prompt about the new User Terms or that they acknowledged receipt of the prompt by clicking on the "Got it" button. *See id.* at 8; *see also* Scolari Decl., Ex. 4. That prompt also advised that if they wanted to "learn more about these changes," they could head to the prominently linked post at X's Privacy Center summarizing the changes. That post states in **the first bullet point** that there were "[g]overning law and forum changes" and that, "we've updated the governing law and forum for lawsuits to Texas as specified in our terms." Supp. Scolari Decl. ¶ 8, Ex. 8. This information about the updated forum selection clause was at all times available and easily accessible to Plaintiffs.

Accordingly, Plaintiffs' argument boils down to complaining that they should not be bound to the updated Terms of Service simply because "Walters did not review subsequent changes to the Terms of Service." Opp. at 5. But it is bedrock law that "[t]he conditions of a form contract may be enforceable even if not read or negotiated by the challenging party, so long as that party was afforded the opportunity to do so." *White Knight Yacht LLC* v. *Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 945 (S.D. Cal. 2019). Here, there is no dispute that Plaintiffs acknowledged being given an opportunity to review the updated User Terms. *See* Scolari Decl. ¶¶ 22-24.

These facts alone are enough for this Court to hold that Plaintiffs had constructive notice of X's current User Terms, and that Plaintiffs' continued access to and use of X's Services after the updated terms went into effect on November 15, 2024, amounted to assent to the forum-selection

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

clause in X's current User Terms. *See Oberstein* v. *Live Nation Entertainment, Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) ("[A]n enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" (quoting *Berman* v. *Freedom Financial Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)); *Berman*, 30 F.4th at 854 ("[I]t is permissible to disclose terms and conditions through a hyperlink" if "the fact that a hyperlink is present [is] readily apparent.").

Plaintiffs contend that these well-settled principles should not apply here, suggesting that this transfer motion presents a "case of first impression" and that "courts in the Ninth Circuit have avoided deciding when a Plaintiff received sufficient notice of a unilateral amendment to a click-through contract of adhesion." Opp. at 13-14. That is simply not true. The case law is abundantly clear that amended terms of service are enforceable—as to even the most substantive of provisions—on fact patterns like this one. *See Oberstein*, 60 F.4th at 515.

And courts in the Ninth Circuit have not avoided deciding this question at all. For example, in *Kaplan* v. *Athletic Media Co.*, Judge Tigar granted a motion to compel arbitration based on an updated arbitration provision where subscribers received an in-app overlay notifying them of the updated terms that read: "**Updated Policies** [] We have made some changes to our Terms of Service and Privacy Policy. By clicking the button below, you acknowledge and consent to our updated policies. For more details and to see the full policies, **click here**." 705 F. Supp. 3d 992, 999 (N.D. Cal. 2023). Despite no indication that the Plaintiffs had actual notice of the updated terms, the court held that the Plaintiffs "had constructive notice," because they received reasonably conspicuous notice where the overlay was "sufficiently large, all of the language in the overlay pertains to agreement to the Terms of Service and Privacy Policy, and the overlay features a hyperlink in bolded text." *Id.* at 1001-02. The very same is true here.

Just two months ago, in *World Wide Foods Inc.* v. *First-Citizens Bank & Trust Co.*, Central

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

District of California Judge Hernán D. Vera upheld the validity of a newly added forum selection clause, where the notice provided to users required no affirmative assent from the plaintiff and where the notice did "not specifically call out the change to include the forum-selection clause," but instead provided a "link to the entire agreement." 2025 WL 2684294, at *3 (C.D. Cal. Aug. 20, 2025) ("Plaintiff does not cite to any caselaw that requires a consumer contract to include what would be, in effect, a lengthy redline of the prior agreement highlighting all of the changes."). And rather than imposing a heightened notice requirement for amendments, as Plaintiffs suggest here, Opp. at 13, the court held the opposite to be true: "notice of updated terms combined with continued use was 'sufficient to demonstrate manifestation of consent to the updated terms.'" *Id.* (quoting and citing *Ghazizadeh* v. *Coursera, Inc.*, 737 F. Supp. 3d 911, 933-34 (N.D. Cal. 2024).

Other decisions from within the district and from other courts are in accord. *See Whalen* v. *NBA Properties, Inc.*, 2025 WL 1948591, at *7-8 (N.D. Cal. July 16, 2025) (holding that an email to subscribers that "requested users to read the [updated] agreement, accessible via a hyperlink" and noting only that the "changes were related to dispute resolution procedures," put subscribers on constructive notice of the newly-added forum selection clause); *Whalen* v. *Facebook, Inc.*, 2022 WL 19934419, *4 (N.D. Cal. Apr. 11, 2022) (finding Instagram's in-app notification sufficient to demonstrate constructive notice, because while the notification "did not specifically reference an arbitration agreement, it is not disputed that clicking on the 'Learn More' button would have taken Plaintiffs to the terms of use, which included an arbitration clause").

Walters' complaint that he "assumed the level of notice would give him some indication that he needed to take time to review the changes, and that X would help explain what those changes were," Opp. at 5, also is of no help to Plaintiffs, as X's notice and related efforts to inform users of the updates did exactly that. Walters acknowledged receipt of the pop-up prompt on October 16, 2024, Scolari Decl. ¶ 24, nearly a full month before the updated User Terms became effective. Walters was also directed by hyperlink to X's Privacy Center, where X had also published a blog

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

post titled "Updates to our Terms and Privacy Policy," that provided additional context on the recent changes, including by stating **in the very first bullet**: "**Governing law and forum changes**: . . . **we've updated the governing law and forum for lawsuits to Texas as specified in our terms**." Supp. Scolari Decl., Ex. 8 (emphasis added). Additionally, as the current terms of service were available to Plaintiffs when the @elizaos account was created on October 31, 2024, Eliza Labs can hardly now complain that it created the @elizaos account without being on notice of those terms.

## III. THE FORUM SELECTION CLAUSES ARE VALID AND ENFORCEABLE

Plaintiffs next argue that the Northern District of Texas forum selection clause was selected in bad faith—relying solely on the fact that X's principal place of business is in the Western District of Texas, rather than the Northern District of Texas. Opp. at 12. Citing that distinction, Plaintiffs contend that the forum-selection clause should be set aside as fundamentally unfair and as constituting "overreaching." Opp. at 17. Neither argument has merit.

Plaintiffs rely on *Carnival Cruise Lines* v. *Shute*, 499 U.S. 585 (1991), to argue that, where a forum selection clause lacks a connection to a defendant's business or physical operations, it can be indicative of bad faith. Opp. at 12. But here, X's decision to change its forum selection clause from the Northern District of California to the Northern District of Texas ***does have a connection*** to X's business operations, as the switch was made in connection with the move of X's headquarters from California to Texas. Therefore, as was true in *Carnival*, there is no evidence that X's forum selection clause was selected "as a means of discouraging [users] from pursuing legitimate claims," and any "suggestion of bad-faith motive" is "belied by" the fact that X's principal place of business is in the same state selected in the forum selection clause. 499 U.S. at 595 (cleaned up).

Nor can Plaintiffs carry the "heavy burden" required to set aside the forum selection clause, as they fail to offer any credible support for their suggestion that by selecting the Northern District of Texas rather than the Western District of Texas, X was "trying to discourage potential plaintiffs . . . from suing." *See Testa* v. *Becker*, 2010 WL 1644883, *1 (C.D. Cal. Apr. 22, 2010). While the

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

Opposition suggests that "X opted for the conservative Northern District of Texas," rather than "the liberal Western District of Texas," as part of a choice "crafted to gain an unfair advantage over its consumers and competitors," Opp. at 12-13, Plaintiffs do not even *attempt* to explain why litigating in the Northern District of Texas, rather than the Western District of Texas, would be any more burdensome to Plaintiffs. *See Campbell* v. *Princess Cruise Lines Ltd.*, 2021 WL 75663, at *4 (N.D. Cal. Jan. 8, 2021) ("Plaintiff makes no effort to explain how requiring passengers to file lawsuits in the Central District of California, rather than the Northern District of California, would discourage passengers from pursuing their legitimate claims generally, or deny Plaintiff her day in court . . . ."). Indeed, the Northern District of Texas is far more convenient for parties, as the Dallas-Fort Worth airport hub is located there, whereas direct travel options to the Western District—which extends from Austin to El Paso almost 600 miles away—are more limited. Thus, Plaintiffs' argument falls far short of satisfying their "'heavy burden of proof' which requires [them] to 'clearly show that enforcement would be unreasonable and unjust.'" *See Testa*, 2010 WL 1644883, at *3 (upholding forum selection clause even where a party was alleged to have "unilaterally modified the FSC at whim in an effort to shop for favorable precedent" including by shifting it "away from the Western District of New York and then (after a two-year gap in which no FSC governed) back to that same district, following an unfavorable decision in the Ninth Circuit").

Plaintiffs' argument also ignores that there are other good-faith bases for X's selection of the Northern District of Texas as its chosen forum. For example, the Northern District of Texas is one of the fastest in the nation at resolving civil litigation, with recent data reflecting that it resolves civil cases significantly faster than both the national average and the Western District of Texas: the median time from filing to case termination is 5.8 months in Northern District of Texas, as compared to the 22.5-month national average, and the 7.8 month average in the Western District of Texas.[1]

[1] *See* Table C-5 – U.S. District Courts-Civil Statistical Tables for the Federal Judiciary (June 30, 2025), App'x Tab 19, at App. 120-21, https://www.uscourts.gov/data-news/data-tables/2025/06/30/statistical-tables-federal-judiciary/c-5.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

Additionally, contrary to Walters' suggestion that "[t]here's not much AI-related happening in Texas, especially not the Dallas/Fort Worth area," Walters Decl. ¶ 11, that area has been "dubbed 'Silicon Prairie'" in connection with the growing trend of technology companies, including AI-focused companies, that have opened, or have committed to opening major operations in the Dallas area.[2] Thus, the Northern District of Texas has also quickly become one of the courts to develop a unique familiarity with the sorts of disputes that technology, and in particular AI, companies often face. For example, just as to X, there are currently eight other cases by or against X currently pending in the Northern District of Texas, including five pending in the Fort Worth Division. *See X Corp.* v *Media Matters for Am.*, 4:23-cv-01175-O; *LeCompte* v. *Campbell*, 4:25-cv-00961-O; *X Corp.* v. *Thang*, 4:25-cv-00546-O; *Reeves* v. *X Corp.*, 4:25-mc-00014-P; *Williams* v. *X Corp*, 4:25-cv-01084-P-BJ; *X Corp.* v. *World Fed'n of Advertisers*, 7:24-cv-00114-B; *Richards* v. *X Corp.*, 3:25-cv-00916-X; *X Corp.* v. *Apple Inc.*, 4:25-cv-00914-P. Similarly, running a search on CourtLink for "artificial intelligence" turns up more than 1,000 dockets from the Northern District of Texas (351 listed as active), and only 10 in the Western District of Texas (6 listed as active). Kurtzberg Decl. ¶¶ 3-4, Exs. 3-4.

Plaintiffs' next argument—that X lacked statutory permission for unilateral amendment, Opp. at 12-13—is also without merit. Plaintiffs attempt to distinguish "Ninth Circuit caselaw establishing that unilateral forum selection clause amendments may be enforceable" by claiming that those decisions are based on ERISA's statutory language. *Id.* But this straw-man argument is beside the point: there is no need for statutory authorization here, given that Plaintiffs themselves (i) agreed that X could modify its terms from time to time, (ii) were given notice of such updates via in-app prompts that they affirmatively acknowledged, and (iii) agreed to be bound by those updated terms "by continuing to access or use the Services after those revisions become effective." *See* above at 2. Thus, unlike in the ERISA context, the amendment is not "unilateral," as Plaintiffs

[2] "What's New in 'Silicon Prairie'? The State of the Dallas Tech Scene," CONCERO (Jul. 10, 2024) https://concero.com/state-of-the-dallas-tech-scene/.

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

assented to it under ordinary contract law principles. *See* above at 3-4; Cal. Civ. Code § 1698(a) ("A contract in writing may be modified by a contract in writing.").

Plaintiffs' related suggestion that the court adopt a rule that would require all website operators to not only satisfy heightened notice requirements, but also to provide every user the "choice to consent or decline the inclusion" of the amended forum selection clause, Opp. at 13, is wholly inconsistent with the notice requirements embodied in clear, controlling case law. *See, e.g.*, *Oberstein*, 60 F.4th at 515-16; *Berman*, 30 F.4th at 854, 856-57. If followed, Plaintiffs' proposed rule would deprive companies of the predictability that forum selection clauses are designed to provide and impose heightened and unnecessary costs on website operators to effectuate changes, regardless of whether users affirmatively acknowledge and accept such changes.

Plaintiffs' suggestion that the forum-selection clauses are unenforceable because X allegedly "controls a monopoly," Opp. at 13-14, fares no better. Plaintiffs' argument not only is without any support in law, but it also runs contrary to Walters' own recent public statements about this lawsuit, including recent comments indicating that in lieu of using X, he is now using an alternate social media service called Farcaster and commenting that X's banning of voices like his will "create [X's] competitors." Kurtzberg Decl. ¶ 5. Walters also suggested to others "on crypto twitter" that they "should prepare to have a social media presence elsewhere," cautioning others not to "make the mistake we did" by putting all their eggs in one basket. *Id.*

Plaintiffs' argument also ignores that courts routinely uphold forum selection and arbitration clauses in the context of antitrust claims. *See, e.g.*, *PennyMac Loan Services, LLC* v. *Black Knight, Inc.*, 2020 WL 5985492, at *5-6 (C.D. Cal. Feb. 13, 2020). Plaintiffs fail to offer any legal support for a rule to the contrary.

Relying on two out-of-circuit cases, Plaintiffs next contend that, if the case is moved to Texas, "Plaintiffs will be unable to compel key witnesses to appear at trial" and will therefore be deprived "of their day in Court." Opp. at 17-18. As the Ninth Circuit has made clear, however,

"the party resisting enforcement of the clause has a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party effectively would be denied a meaningful day in court," and it is not enough to "allege[] only that some of the witnesses will be inconvenienced if forced to travel to California for trial." *Pelleport Investors, Inc.* v. *Budco Quality Theatres, Inc.*, 741 F.2d 273, 281 (9th Cir. 1984), *overruled on other grounds*, *Powerex Corp*. v. *Reliant Energy Services, Inc*., 551 U.S. 224, 235-36 (2007). Rather, in establishing the necessary showing regarding the unavailability of witnesses, courts within this district have required that such a showing include the production of "information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action." *Royal Queentex Enterprises* v. *Sara Lee Corp.*, 2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000).

Plaintiffs have failed to satisfy this high bar as to any of the witnesses they claim to want to call. First, to the extent any Eliza Lab employees other than Walters may be relevant, Plaintiffs fail to identify any of them by name, location, or provide context on what their testimony might concern. Second, with respect to witnesses employed by the Defendants, Plaintiffs themselves suggest that the relevant personnel are largely in New York, not California. Walters Decl. ¶ 8. Texas is more, not less, convenient for those witnesses. And even if the relevant witnesses from Defendants were in California, courts "accord less weight to the inconvenience of party witnesses whom the parties can compel to testify." *See Gonzales* v. *Charter Communications, LLC*, 2020 WL 5074024, at *3 (N.D. Cal. Aug. 24, 2020). Finally, Plaintiffs similarly fail to provide sufficient details as to potential third-party witnesses, as they do not identify any of those by name or explain why, or to what extent, their testimony would be relevant to the action. *See* Walters Decl. ¶¶ 18-23. Even assuming those third-parties were relevant, their potential importance to this case is a far cry from the "exceptional" and "compelling case for overriding the forum selection clause" in *Madoff* v. *Bold Earth Teen Adventures*, 2013 WL 1337337, at *6-*8 (D. Haw. Mar. 28, 2013) (noting the significance of the "forty-three Hawaii-based witnesses relevant to proving Defendants' liability,"

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

which included "Hawaii first responders, Hawaii search and rescue personnel, Hawaii government permitting officials, and other hiking and kayaking tour operators in Hawaii"). Nor do Plaintiffs submit evidence that these witnesses would be unwilling to provide testimony in Texas voluntarily.

Plaintiffs' remaining argument that transfer will contravene a strong public policy of California because Plaintiffs will supposedly "lose their unfair competition claim if transferred" also fails to meet the high bar for setting aside a forum selection clause. As a threshold matter, the present motion only concerns the question of forum, and Plaintiffs' speculation as to issues regarding choice of law is irrelevant to the issues currently before the court. *See East Bay Women's Health, Inc.* v. *GloStream, Inc.*, 2014 WL 1618382, at *3 (N.D. Cal. Apr. 21, 2014) ("A forum-selection clause determines where an action will be heard, and is 'separate and distinct from choice of law provisions that are not before the court.'"). Thus, when faced with similar arguments, courts typically require a party seeking to avoid transfer to demonstrate that the public policy underlying California's UCL remedies relate to venue. *See Besag* v. *Custom Decorators, Inc.*, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009) (explaining that to defeat enforcement of a forum selection clause a party "must demonstrate that the public policy . . . relates to venue"). Thus, Plaintiffs' reliance on cases involving class actions, where the change in venue would have contravened California's specific "strong public policy favoring ***consumer class actions***" (*see* Opp. at 19)(emphasis added), has no bearing here, as Plaintiffs' claims are not on behalf of a class and Plaintiffs do not identify any other recognized strong public policy interest held by California that would be impacted by transfer.

Plaintiffs' belated effort to rely on a not-yet-asserted CLRA claim also fails. Courts may not consider such claims in deciding a motion to transfer. *See Angell* v. *Shell Oil Co.*, 2004 WL 7337807, at *3 (D.N.M. Aug. 20, 2004) ("[T]he Court will not consider hypothetical claims as support for a motion to transfer."). And, as with Plaintiffs' arguments as to its UCL claims, Plaintiffs fail to establish that a change in forum to another district court will ultimately result in a different

outcome for Plaintiffs' hypothetical CLRA claim, such that the presumptively valid forum selection clause should be set aside. *See Sawyer* v. *Bill Me Later, Inc.*, 2021 WL 7718723, at *7-8 (C.D. Cal. Oct. 21, 2021) (finding no strong public policy of California implicated where plaintiff advanced a CLRA claim, because "[p]laintiff's argument rests on the assumption that if this case is transferred, then the District of Utah will automatically enforce the choice-of-law provision favoring Utah law").

## IV. ALL OF THE CLAIMS ARE COVERED BY THE FORUM SELECTION CLAUSES

Plaintiffs contend that, even if X's Texas forum selection clauses were valid, Plaintiffs could not have filed their complaint in the Northern District of Texas because of a lack personal jurisdiction over X.AI LLC and Walters, and that forcing Walters to litigate his claim against the X.AI Defendants in Texas would violate his due process rights. Opp. at 10. That is false.

*First*, when Plaintiffs filed their original complaint, the complaint named only X Corp. ECF 1. It was not until after X Corp. informed Plaintiffs that they intended to transfer this case that Plaintiffs belatedly sought to add the X.AI Defendants. *See* Kurtzberg Decl., Ex. 5. As the original complaint even included the X.AI Defendants as relevant non-parties, Plaintiffs' belated amendment in the face of a transfer motion screams of the very same sort of forum shopping Plaintiffs wrongly accuse Defendants of in their opposition. *See, e.g.*, *Regents of the Univ. of California* v. *Howmedica, Inc.*, 23 Fed. R. Serv. 2d 260, at *4 (D. Md. 1976) (refusing to consider plaintiffs' motion for leave to amend to add a new party where that motion was filed after defendants moved to transfer).

*Second*, Plaintiffs' suggestion that Walters' own claimed lack of contacts with Texas bear on whether this action could have been brought in Texas ignores that courts only consider whether the transferee court would have had "subject matter jurisdiction over the claims and personal jurisdiction over the ***defendant***." *Doe* v. *Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020) (emphasis added). Thus, whether a Texas court otherwise could exercise personal jurisdiction over Walters with respect to claims involving the X.AI Defendants is irrelevant here. Plaintiffs' suggestion that this transfer motion implicates Walters' due process rights, Opp. at 10, fails too, as

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

Fourteen Amendment Due Process "limits the power of a court to render a valid personal judgment against a nonresident *defendant*, not a plaintiff." *Relink US LLC* v. *Tesla Inc.*, 2025 WL 2104030, at *1 (N.D. Cal. July 28, 2025) (emphasis added) (cleaned up). Thus, whether Walters is amenable to personal jurisdiction in the Northern District of Texas is irrelevant to the present motion.

*Third*, Plaintiffs also have not established that this case could not have been filed in the Northern District of Texas because of a lack of personal jurisdiction over Defendant X.AI LLC. As Plaintiffs concede, Defendant X.AI LLC has waived any objection as to personal jurisdiction in the Northern District of Texas, rendering this argument purely academic. In any event, X.AI LLC is a limited liability company and wholly owned subsidiary of X.AI Corp., Declaration of Sydney Carrick ¶ 3, which Plaintiffs concede is registered to do business in Texas, *see generally*, ECF 53-2. And there is no factual basis for Plaintiffs' suggestion that X.AI Corp. is subject to suit in Texas, while X.AI LLC is not. The Amended Complaint makes no meaningful distinction between the conduct of the two entities, which it effectively treats as a single entity, "X.AI." Compl. at 1.

*Fourth*, if the Texas forum-selection clauses in X's User Terms or Developer Agreement are valid (which they are, as Plaintiffs assume for purposes of their argument as to the X.AI claims), then through those forum-selection clauses, each Plaintiff gave its "consent to personal jurisdiction" in the Northern District of Texas for "***[a]ll disputes*** related to [X's] Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services." Scolari Decl., Ex. 1 at § 6 (emphasis added). There is no question this is such a dispute. Therefore, under the closely related parties doctrine recognized under Ninth Circuit law, these provisions can extend to non-parties, like the X.AI Defendants, where the claims brought against them closely relate to the interpretation and performance of the agreement containing the forum selection clause. Br. at 15-16. Were it otherwise, any plaintiff could strategically defeat any forum selection clause simply by naming a corporate affiliate of the defendant that is a party to the clause.

Plaintiffs respond to this argument by claiming that the "alleged conduct underlying

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

Walters's antitrust claims against the X.AI Defendants has no 'close relation' to X's Terms of Service," Opp. at 9-10, but nothing could be further from the truth. The allegations here against the X.AI Defendants focus on an alleged misapplication of the X Terms of Service to keep Plaintiffs off of the X platform. *See, e.g.,* Compl. ¶¶ 72-74. Those allegations are precisely the type of allegations that courts have found to trigger the closely related parties doctrine.

This is illustrated by the very cases relied on by Plaintiffs. As explained in *Velaro, Inc.* v. *National Flood Services, LLC*, "[e]ven when a party did not sign a contract, the forum selection clause within that contract can apply to 'non-parties' when 'the alleged conduct of the non-parties is so closely related to the contractual relationship.'" 2021 WL 8779924, at *5 (C.D. Cal. July 7, 2021); *see also Manetti-Farrow Inc*. v. *Gucci America, Inc*., 858 F.2d 509, 514 n.5 (9th Cir. 1988). That is directly implicated here, as the crux of Plaintiffs' allegations is that Defendants conspired to falsely accuse Plaintiffs of violating X's terms and conditions to "summarily deplatform[] [their] competitor Eliza clearing the way for its and X.AI's copycat product Ani" before then also using the "false pretenses of evaluating Plaintiffs for compliance purposes and false promises of reactivation." *See, e.g.,* Compl. ¶¶ 12-15, 72-77, 150. These allegations not only show a close relationship between the X.AI Defendants and X's User Terms and Developer Agreement, but they also plainly undercut the Opposition's assertion that "X's Terms of Service confer no benefits to the X.AI Entities." Opp. at 11. This is especially true, as Plaintiffs also allege that through X's User Terms and related policies, Defendants are "excluding all competitors from also using X's data and user prompts" and ensuring "that their AI products will improve at a faster rate than competitors' AI Agents/chatbots, which confers a significant competitive advantage to X.AI achieved through anticompetitive exclusive dealing and tying agreements with X." Compl. at ¶ 153.

Put simply, Plaintiffs allege that X's Terms of Service and related policies directly provided a benefit to the X.AI Defendants, and that their antitrust claims arise out of or at least relate to the benefit that they allege the X.AI Defendants received from X's Terms of Service and related

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com

policies. Such allegations make clear that Plaintiffs' claims against the X.AI Defendants all arise out of Plaintiffs' contractual relationship with X and an alleged conspiracy to misuse X's Terms of Service to keep Plaintiffs off the X platform. *See PennyMac*, 2020 WL 5985492, at *5-6 (finding plaintiffs anticompetition claims to be "grounded in" the contract at issue where the alleged "anticompetitive practices include the use of overly broad and onerous contract provisions in licensing agreements" and where the plaintiff "would not have experienced Black Knight's anticompetitive practices were it not for" those licensing agreements).

## V. TRANSFER OF THE ENTIRE ACTION ALSO SERVES JUDICIAL ECONOMY

As explained above, Plaintiffs' claims all stem from the same alleged anticompetitive scheme. *See* Part IV above. Accordingly, even if there were aspects of this dispute not subject to a Texas forum clause (and there are not), principles of judicial economy would still support moving the entire action to the Northern District of Texas. *See Independent Financial Group, LLC* v. *Quest Trust Co.*, 2021 WL 2550397, at *6 (N.D. Cal. June 22, 2021) (transferring the entire action, including claims not subject to the forum selection clause, because "[t]he claims all spring from the same fundamental facts, would require litigation of the same essential questions, and would threaten to create inconsistent rulings if litigated in multiple forums"); *see also Fred G.* v. *Anthem Blue Cross Life & Health Insurance Co.*, 2022 WL 3227127, at *3 (N.D. Cal. Aug. 10, 2022) ("Generally speaking, judicial economy is better served in a single action in a district where venue will be proper for all defendants" (cleaned up)). The same is true here. It would make no sense to litigate claims alleging a conspiracy among the Defendants in separate forums. Given the enforceable forum selection clause in X's Terms of Service, judicial economy would be best served by transferring the entire case there, even if those terms did not apply to the X.AI Defendants (which they do).

## CONCLUSION

X Corp. respectfully requests that the Court transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

Dated: October 22, 2025

/s/ Joel Kurtzberg
Joel Kurtzberg (admitted *pro hac vice*)
John MacGregor, State Bar No. 304330
Ivan Torres (admitted *pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone: 212.701.3120
jkurtzberg@cahill.com
jmacgregor@cahill.com
itorres@cahill.com

Adrian Sawyer, State Bar No. 203712
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

***Attorneys for Defendants X Corp., X.AI Corp., and X.AI LLC***

SAWYER & LABAR LLP
1700 MONTGOMERY ST, STE 108
SAN FRANCISCO, CA 94111
TELEPHONE: 415.262.3820
www.sawyerlabar.com