UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZA LABS, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>X CORPORATION, et al.,<br><br>    Defendants. | Case No. 25-cv-07243-AMO<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 42 |

Before the Court is Defendants' motion to transfer this action to the U.S. District Court for the Northern District of Texas. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for November 5, 2025, is VACATED. *See* Civil L.R. 7-6, Fed. R. Civ. Pro. 78(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** the motion for the following reasons.

I.    **BACKGROUND**

Plaintiffs Eliza Labs, Inc. ("Eliza Labs") and Shaw Walters initiated this action on August 27, 2025. Dkt. No. 1. On September 23, 2025, Plaintiffs filed their Amended Complaint, which is the operative complaint in this action. Dkt. No. 21. Plaintiff Eliza Labs alleges it is a software developer, founded by Plaintiff Shaw Walters in 2024, that designed open source software for operating autonomous agent systems ("AI Agents" or "Generative AI Chatbots") on social media platforms. *See id.* ¶¶ 4, 18, 34-35. Plaintiffs allege that their software enables individuals to create AI Agents that can operate on the X platform, operated by X Corp. *See id.* ¶ 4. Plaintiffs also allege that they each maintained developer accounts on the X platform: Plaintiff Eliza Labs alleges it maintained an account with the handle "@ElizaOS," and Plaintiff Walters alleges he

1  maintained an account with the handle "@shawmakesmagic." *See id.* ¶¶ 8, 53. According to X's

2  records, Plaintiffs' @shawmakesmagic and @ElizaOS accounts were respectively created on

3  September 1, 2024, and October 30, 2024. Dkt. No. 43 at ¶¶ 21, 24.

4  Since at least September 29, 2023, the terms of use governing Plaintiffs' use of and access

5  to the X platform have provided that "By using the Services you agree to be bound by these

6  terms"[1] (Dkt. No. 43-1 at 3; Dkt. No. 43-3 at 4) and have stated:

> We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at x.com/tos, will govern our relationship with you. We will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

Dkt. No. 43-1 at 10; Dkt. No. 43-3 at 11. Plaintiff Shaw Walters admits to having reviewed a copy of X's Terms of Service when he first created his account on September 1, 2024, but denies reviewing subsequent changes to those terms. Dkt. No. 51 ¶ 17.

On October 16, 2024, X published an update to its Terms of Service, to be effective on November 15, 2024 (the "2024 X User Terms"). Dkt. No. 43 ¶ 16. The 2024 X User Terms contained the following forum selection clause, requiring all disputes to be brought exclusively in federal or state courts in Texas:

> All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and [users] consent to personal jurisdiction in those forums and waive any objection to inconvenient forum.

---

[1] The "Services" are defined broadly as: "use of [X's] services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the 'Services'), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as 'Content')." Dkt. No. 43-1 at 2.

1  Dkt. No. 43-1 at 10.  This language replaced language in the previous version of X's Terms of
2  Service, which included a forum selection clause designating "the federal or state courts located in
3  San Francisco County, California," rather than courts in Texas.  Dkt. No. 43-3.  Also on October
4  16, 2024, X began notifying users about the recent updated terms, by serving the following prompt
5  to X users that logged into their accounts:



14  Dkt. No. 43 ¶ 16; Dkt. No. 43-4.  This prompt was served for 180 days or until the user clicked the
15  "Got it" button on the prompt.  Dkt. No. 43 ¶ 18.  The prompt included blue hyperlinks to the
16  2024 X User Terms and to a blog post available at the X Privacy Center hyperlink, which included
17  a summary of the updates reflected in the 2024 X User Terms that flagged in the very first bullet
18  point that there were "[g]overning law and forum changes" and that, "we've updated the
19  governing law and forum for lawsuits to Texas as specified in our terms."  Dkt. No. 55 ¶¶ 7-8, Ex.
20  8.  According to X's records, Plaintiffs' @shawmakesmagic and @ElizaOS accounts received and
21  clicked on the "Got it" prompt on October 16, 2024, and October 30, 2024, respectively.  Dkt. No.
22  43 ¶¶ 23-24.
23       Additionally, Plaintiffs allege that they paid for developer accounts.  Dkt. No. 21 ¶¶ 8, 53.
24  Setting up paid accounts requires users to affirmatively agree to the Developer Agreement, which
25  governs a user's access to and use of licensed X Application Programming Interfaces (API), X
26  content such as user profile information ("Licensed Material") and related paid services, by
27  clicking "Accept & Subscribe."  Dkt. No. 43 ¶¶ 25-27; Dkt. No. 43-5.
28

3

1   Since October 11, 2024, X's Developer Agreement (together with the X User Terms, the
2   "Relevant Agreements") contained the following forum selection clause, requiring all disputes to
3   be brought exclusively in federal or state courts in Texas:

> All disputes related to this Agreement, including any disputes, claims, or controversies arising out of or relating to this Agreement, the marketing of Licensed Material, and/or [the user's] participation in the Licensed Material, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

Dkt. No. 43 ¶ 31. According to X's records, Plaintiff Eliza Labs clicked the "You accept the Terms & Conditions" button, and thus affirmatively agreed to this forum selection clause, on December 10, 2024, and Plaintiff Shaw Walters clicked on it on October 11, 2024. *Id.* ¶¶ 29, 32, 34.

The forum selection clauses in the relevant agreements were in effect throughout the time of the alleged wrongdoing in the Complaint (which allegedly occurred between early 2025 and August 2025), at the time Plaintiffs brought this lawsuit, and remain in effect. Dkt. No. 42 at 9; Dkt. No. 43 ¶ 16.

Plaintiffs allege Defendant X Corp. is a "Nevada Corporation with a principal place of business" in "Bastrop, [Texas]," that Defendant X.AI LLC is a "Nevada limited liability company . . . with a place of business" in "Palo Alto, [California]," and that both X Corp. and X.AI LLC are subsidiaries of Defendant X.AI Corp., a "Nevada corporation with its principal place of business located in Palo Alto, California." Dkt. No. 21 ¶¶ 20-22.

Plaintiffs further allege that Defendant X Corp. suspended or "deplatformed" their associated X accounts under "false pretenses" to "extract know-how, eliminate a competitor, and clear the field" for the launch of AI Agents software allegedly developed and produced by X.AI. *Id.* ¶¶ 14, 67, 71-74, 149. From early 2025 through August 2025, X allegedly alerted Plaintiffs that their accounts violated X's terms and conditions, including the X User Terms of Service (the "X User Terms"), through several communications, including a cease and desist letter. *See id.* ¶¶ 36-40, 57-61. As part of these communications, X allegedly sought information regarding

4

Eliza Labs' software integration with X's platform and its compliance with the X User Terms. *See id.* In response, Plaintiffs allegedly provided X with information about its open source software, including on "creating, developing, building, and deploying AI Agents" and "[Eliza Labs'] operations on X." *Id.* ¶ 57. Plaintiffs allege X Corp. used this information to optimize X.AI's AI Agents operations on X. *See id.* ¶¶ 57, 77. Plaintiffs allege X then suspended their accounts on or around June 10, 2025, for violations of X's terms and conditions, and allegedly blocked links to Eliza Labs' website and Github from being published on X. *See id.* ¶¶ 11, 53, 55. Finally, Plaintiffs allege that "[a]t all times since their suspension, both accounts complied fully with X's terms and conditions," and that Plaintiffs repeatedly "demonstrated [their] full compliance with X's terms and conditions" when responding to X's requests for more information. *Id.* ¶ 56.

Based on these allegations, Plaintiffs assert thirteen claims. First, Plaintiffs assert seven claims against all Defendants: (1) tying in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, (2) unreasonable restraints of trade in violation of Section 1 of the Sherman Act, (3) monopolization and monopoly maintenance in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, (4) attempted monopolization in violation of Section 2 of the Sherman Act, (5) vertical restraints of trade and tying in violation of California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, 16726, (6) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and (7) unjust enrichment. *Id.* ¶¶ 175-205, 224-47, 271-88. Additionally, Plaintiffs assert claims of unlawful agreement in violation of Section 1 of the Sherman Act, against Defendants X Corp. and X.AI, unlawful monopolization and monopoly maintenance in violation of Section 2 of the Sherman Act, against Defendants X.AI LLC and X.AI Corp. and separately against Defendant X, and intentional misrepresentation, concealment, and false promise against Defendant X. *Id.* ¶¶ 168-174, 206-23, 248-70.

**II.     DISCUSSION**

The Court holds that this action should be transferred to the U.S. District Court for the Northern District of Texas under Title 28 U.S.C. § 1404(a) because (i) Plaintiffs were aware of and repeatedly agreed to be bound by the X User Terms and X's Developer Agreement; (ii) even if Plaintiffs did not have actual knowledge of the mandatory forum selection, they had

5

constructive notice; (iii) the forum selection clauses in those agreements apply to this dispute; and (iv) the forum selection clauses are valid and enforceable. The Court considers each of these reasons after setting forth the relevant legal standard.

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "When a case concerns an enforcement of a forum selection clause, Section 1404(a) provides a mechanism for its enforcement and 'a proper application of [the statute] requires that a forum-selection clause be given controlling weight in all but the most exceptional cases.'" *Li* v. *Amazon.com Services LLC,* 2023 WL 8720669, at *2 (N.D. Cal. Dec. 18, 2023) (quoting *Atlantic Marine Construction Co., Inc.* v. *U.S. District Court for the Western District of Texas*, 571 U.S. 49, 60 (2013)). "'[T]he party seeking to avoid a forum selection clause bears a heavy burden to establish a ground upon which [the court] will conclude the clause is unenforceable.'" *Id.* (quoting *Doe 1* v. *AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (per curiam)).

While courts often look to a mix of factors regarding both private- and public-interests, in resolving motions to transfer under Section 1404(a), "[w]hen there is a valid forum-selection clause, the court 'should not consider arguments about the parties' private interests . . .' and, the 'court [ ] must deem the private-interest factors to weigh entirely in favor of the preselected forum.'" *Lawson* v. *DoorDash, Inc.*, 2023 WL 2782314, at *2 (N.D. Cal. Jan. 31, 2023) (quoting *Atlantic Marine Construction*, 571 U.S. at 64). Thus, "'[o]nly under extraordinary circumstances unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied.'" *Sun* v. *Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *Atlantic Marine*, 571 U.S. at 62). To establish such extraordinary circumstances a plaintiff must make "a strong showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so

gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *Id.* (quoting *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

### B. Plaintiffs Had Knowledge of and Agreed to the Forum Selection Clauses in the Relevant Agreements

Plaintiffs' allegations leave no doubt that Plaintiffs received sufficient notice of the Relevant Agreements, such that they had constructive knowledge of the Texas forum selection clauses. Indeed, Plaintiffs invoke the Relevant Agreements in alleging that Eliza Labs "demonstrated its full compliance with X's terms and conditions," in response to inquiries from X. Dkt. No. 21 ¶ 56. Additionally, as both Plaintiffs opened and maintained developer accounts on X before their suspension, each necessarily received notice of the X User Terms and Developer Agreement on numerous occasions, including when Plaintiffs (i) signed up as X users, (ii) affirmatively agreed to the X Developer Terms, including the Developer Agreement, in connection with clicking "Accept & Subscribe" when each Plaintiff upgraded their account to a paid developer account, (iii) signed in to the X platform, (iv) received and acknowledged in-app prompts as to X's updated Terms of Service reflected in the 2024 X User Terms, and (v) when Plaintiffs engaged in direct correspondence with X personnel that invoked the X User Terms. As Plaintiffs here have themselves acknowledged having notice of the Relevant Agreements, there can be no serious question as to whether Plaintiffs voluntarily assented to them by acknowledging receipt and continuing to use the X platform, and should be bound by the Terms to which they agreed.

Nevertheless, Plaintiffs argue that they should not be bound by the forum selection clauses, because they chose not to review the updated versions of the Relevant Agreements before assenting to them. Dkt. No. 50 at 5. But whether Plaintiffs actually reviewed the agreements is irrelevant, because what matters for purposes of resolving this motion is that Plaintiffs had the *opportunity* to read the updated agreements – and it is undisputed that they did. *See White Knight Yacht LLC* v. *Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 945 (S.D. Cal. 2019) ("The

1 conditions of a form contract may be enforceable even if not read or negotiated by the challenging party, so long as that party was afforded the opportunity to do so.").[2]

### C. The Mandatory Forum Selection Clauses in the Relevant Agreements Apply to Plaintiffs' Claims

Plaintiffs' allegations and claims relate directly to Plaintiffs' use of, and suspension from, the X platform, and therefore fall squarely within the broad scope of the forum selection clauses in the Relevant Agreements, which require "all disputes" related to either X's Services, the X User Terms, or X's Developer Agreement to be brought exclusively in Texas courts. *See, e.g.*, *Sun*, 901 F.3d at 1086 ("[F]orum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement."). Courts have also held that broad venue clauses cover noncontractual claims that fall within the scope of the forum selection clause, including with respect to antitrust claims and claims brought under California Business and Professions Code § 17200. *See, e.g.*, *Li*, 2023 WL 8720669, at *7 (enforcing forum selection clause where plaintiffs brought claims under California Business and Professions Code § 17200); *Cascade Settlement Services LLC* v. *ADT LLC*, 2025 WL 2173959, at *5 (N.D. Cal. July 31, 2025) (holding antitrust claims were covered by broadly worded jurisdictional retention provision).

Plaintiffs' claims here do not merely "relate to" X's Services and the Relevant Agreements. The Services and Relevant Agreements are central to their claims, all of which revolve around Plaintiffs' allegations that X "deplatformed Eliza Labs and Mr. Walters because the accounts violated X's terms and conditions" and that "X then delayed, throttled, and impermissibly inspected its competitor Eliza's product under the false pretenses of evaluating Plaintiffs for compliance purposes and false promises of reactivation." Dkt. No. 21 ¶¶ 14, 55. Plaintiffs' claims are thus encompassed within the forum selection clauses.

---

[2] The Court also declines Plaintiffs' invitation to adopt a new rule that would require website operators to not only satisfy heightened notice requirements, but also to provide every user the "choice to consent or decline the inclusion" of the amended forum selection clause, Dkt. No. 50 at 13, as such a rule is inconsistent with existing case law.

### D. The X User Terms Also Apply to Plaintiffs' Claims Against the X.AI Defendants

Plaintiffs' claims against the X.AI Defendants also fall within the scope of the X User Terms because Plaintiffs allege that the X.AI Defendants engaged in the same scheme as X – i.e., X and X.AI removed Plaintiffs from X and pretextually accused them of violating X's terms and conditions for the purpose of reducing competition with X.AI's product, Grok. *See, e.g.*, Dkt. No. 21 ¶¶ 170-71, 219. The mere fact that Plaintiffs brought these claims against non-signatories to the agreement (the X.AI Defendants) does not mean that the X User Terms do not govern. Rather, "non-parties to an agreement containing a forum-selection clause," like the X.AI Defendants vis-à-vis the X User Terms, "can benefit from such a clause" where, as here, the "litigation concern[s] conduct related to the agreement." *Lentini* v. *Kelly Services, Inc.*, 2017 WL 4354910, at *5 (N.D. Cal. Oct. 2, 2017) (forum selection clause was enforceable as to non-signatory defendant because the interactions between plaintiff and the non-signatory defendant "took place as part of the larger contractual relationship" subject to the clause and the defendant was "willing to submit to the forum-selection clause"); *see Manetti-Farrow*, Inc. v. *Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("'[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses,'" including where "the alleged conduct of the non-parties is so closely related to the contractual relationship."); *see also Build Group, Inc.* v. *N.R. Windows, Inc.*, 2022 WL 3697355, at *4-5 (C.D. Cal. Feb. 17, 2022) (finding non-signatory plaintiffs subject to forum selection clause because the clause covered "any litigation or special proceeding to resolve any dispute or claim arising from, related to, or connected with this Agreement" and "Plaintiffs' claims relate[d] to the interpretation and performance of the [agreement] itself"). In light of the factual overlap across Plaintiffs' claims, the assertion that their claims against the X.AI Defendants have no "close relation" to the X User Terms (Dkt. No. 50, at 9-10) is unpersuasive.

### E. The Forum Selection Clauses in the Relevant Agreements Are Valid and Enforceable

Finally, Plaintiffs have not established that the forum selection clauses are invalid or unenforceable. Plaintiffs bear a "heavy burden" in showing a forum selection clause is

unenforceable.  *Li*, 2023 WL 8720669, at *2 (internal quotations omitted).  They must make a "strong showing" of either (i) fraud or overreaching, (ii) contravention of a strong public policy, or (iii) such "grave difficult[y] and inconvenien[ce]" in having the trial in the contracted forum that they would, "for all practical purposes be deprived of [their] day in court."  *Sun*, 901 F.3d at 1087-88.  None of these factors are present here.

First, while Plaintiffs' Complaint includes claims alleging intentional misrepresentation, concealment, and false promises, none of the claims call into question whether the forum selection clauses were the product of fraud or overreaching.  Having had multiple opportunities to review and reject these clauses, Plaintiffs' voluntary decision to repeatedly agree to the Relevant Agreements, and even to upgrade their accounts to paid developer accounts, undermine any potential arguments as to fraud or overreaching.

Second, enforcing the forum selection clause would not contravene a strong public policy of California.  As Plaintiffs plead, X Corp. is a "Nevada Corporation with a principal place of business" in "Bastrop, [Texas]" (Dkt. No. 21 ¶ 20), thus significantly limiting any local interest California may have in this controversy.  To the extent California may have an interest in providing California residents a forum for redress, because Defendants "are not California corporations, California has little interest in keeping the litigation in this state to deter future conduct."  *Moretti* v. *Hertz Corp.*, 2014 WL 1410432, at *5 (N.D. Cal. Apr. 11, 2014) (quoting *Guimei* v. *General Electric Co.*, 172 Cal. App. 4th 689, 703 (2009) (internal quotation marks omitted).  Nor can Plaintiffs carry their burden of establishing that the transfer of this action to the Northern District of Texas will result in any remedy being "altogether foreclosed and unavailable."  *LaCross* v. *Knight Transport, Inc.*, 95 F. Supp. 3d 1199, 1206 (C.D. Cal. 2015).  Plaintiffs' concerns over losing access to California causes of action are of no relevance because they do not relate to the question of forum but the separate issue of choice of law, which is not at issue in this motion.  *See E. Bay Women's Health, Inc.* v. *GloStream, Inc.*, 2014 WL 1618382, at *3 (N.D. Cal. Apr. 21, 2014) ("A forum-selection clause determines where an action will be heard, and is 'separate and distinct from choice of law provisions that are not before the court.'").

1    Third, Plaintiffs do not and cannot plausibly claim that trial in the Northern District of
2 Texas will be so gravely difficult and inconvenient that they will be deprived of their day in court.
3 Central to their contention of inconvenience is Plaintiffs' assertion that certain of X's California-
4 based employees would remain outside the subpoena power of the Northern District of Texas,
5 Dkt. No. 50 at 24-25, but courts "accord less weight to the inconvenience of party witnesses whom
6 the parties can compel to testify." *See Gonzales v. Charter Communications, LLC*, 2020 WL
7 5074024, at *3 (N.D. Cal. Aug. 24, 2020).  Moreover, though Plaintiffs further resist transfer on
8 the basis that unidentified non-party witnesses would fall outside of such subpoena power to
9 compel their testimony, *see, e.g.*, Dkt. No. 51 ¶¶ 11, 18-19, the potential importance of those
10 persons to this case is a far cry from the "exceptional" and "compelling case for overriding the
11 forum selection clause" necessary to prevent transfer.  *Madoff v. Bold Earth Teen Adventures*,
12 2013 WL 1337337, at *6-*8 (D. Haw. Mar. 28, 2013).  As the Ninth Circuit has recognized,
13 Supreme Court jurisprudence suggests this factor "is difficult to satisfy" because "[w]here the
14 parties have agreed to a forum-selection clause, they 'waive the right to challenge the preselected
15 forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of
16 the litigation.' " *Sun*, 901 F.3d at 1091 (quoting *Atlantic Marine Construction*, 571 U.S. at 64).
17 Plaintiffs fail to establish grave inconvenience to override the valid forum selection clause.

## III.     CONCLUSION

For the foregoing reasons, the Court finds that transfer of the case is proper under Title 28 U.S.C. § 1404(a), and Defendants' motion to transfer the instant action to the Northern District of Texas is **GRANTED**.  The Clerk of the Court is directed to transfer this action to the United States District Court for the Northern District of Texas and to close the file.

**IT IS SO ORDERED.**

Dated: October 27, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

11